UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                   Case No. 08-CR-212

YU TIAN LI,

    Defendant.

**RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS COUNTS 4 AND 5 OF INDICTMENT AND ORDER ON DEFENDANT'S MOTION TO SEVER COUNTS 4 AND 5**

## I. BACKGROUND

On August 5, 2008, a grand jury sitting in the Eastern District of Wisconsin returned a five-count indictment, together with a forfeiture notice, against Yu Tian Li ("Li"). Counts 1, 2 and 3 charge Li with concealing, harboring, and shielding from detection certain aliens for the purpose of commercial advantage and private financial gain, all in violation of Title 8 U.S.C. §§ 1324(a)(1)(A)(iii), 1324(a)(1)(A)(v)(II), and 1324(a)(1)(B)(i). Count 4 charges Li with possession of a firearm on July 16, 2008, to wit, a Ruger .22 caliber handgun, bearing serial number 15-22220, Li having been previously convicted of a misdemeanor crime of domestic violence, all in violation of Title 18 U.S.C. §§ 922(g)(9) and 924(a)(2). Count 5 charges Li with the same offense as charged in Count 4, but with respect to a different firearm, to wit, a Glock .40 caliber handgun, bearing serial number GSS234.

Li was arraigned and entered a plea of not guilty to all charges. A pretrial conference is currently scheduled to be conducted before the Honorable William C. Griesbach on October 14, 2008, with a trial before Judge Griesbach currently scheduled to commence on October 27, 2008. On August 15, 2008, in accordance with the pretrial motion schedule issued at Li's arraignment, Li

filed a motion seeking the dismissal of Counts 4 and 5 of the indictment, which motion has now been fully briefed and is ready for resolution. Thereafter, and after receiving leave to do so, Li filed a motion to sever the trial of Counts 4 and 5 from the trial of Counts 1 through 3. That latter motion has now been fully briefed and is ready for resolution. For the reasons which follow, it will be recommended that Li's Motion to Dismiss be denied and it will be ordered that Li's Motion for Severance be granted.

## III. DISCUSSION

### A. Motion to Dismiss

Li's Motion to Dismiss is predicated on the proposition that application of the Supreme Court's recent decision in *District of Columbia v. Heller*, 128 S.Ct. 2783 (U.S. 2008) to 18 U.S.C. § 922(g)(9) leads to the conclusion that such statutory section is unconstitutional. The issue decided in *Heller* was "whether a District of Columbia prohibition on the possession of usable handguns in the home violate[d] the Second Amendment to the Constitution." *Id.* at 2787-88. The Supreme Court in *Heller* struck down two District of Columbia laws to the extent that they totally banned handgun possession in the home and required all firearms in the home to be kept inoperable at all times, and thus unavailable for the lawful purpose of self-defense. *Id.* at 2821-22.

The core holding in *Heller* is that the Second Amendment protects an individual's right to possess and bear arms, irrespective of maintaining a militia, in one's home for the purpose of self-defense. *Id.* at 2817-18. In striking down the laws in question, however, the Court noted:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such

as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 2816-17 (citations omitted). Furthermore, a footnote accompanying that passage reads as follows: "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." *Id.* at 2817 n.26.

Li argues that the Supreme Court's omission of specific reference to the statutory section under which he is charged is telling. He argues that

> the Court's decision not to reference 18 U.S.C. § 922(g)(2), (3), (5), (6), (7), (8), and (9) along with the language "presumptively" provides an entirely different meaning to Footnote 26. This language suggests that the Court was advising the lower courts that although 18 U.S.C. § 922(g)(1) and (g)(4) are likely to be upheld if challenged, the other subsections of 18 U.S.C. § 922(g) are open questions following Heller.
>
> Overall, it is only logical to suggest that if the Supreme Court determines for the first time that a major Constitutional provision is to be interpreted in a particular way, any act of Congress that is facially inconsistent with the Constitutional provision as interpreted by the Supreme Court must be reevaluated. This is exactly what the Defendant is asking the Court to do with 18 U.S.C. § 922(g)(9).
>
> 18 U.S.C. § 922(g)(9) prohibits the possession of a firearm by any person who has been previously convicted in any court of a misdemeanor crime of domestic violence. The question which needs to be answered is whether the Framers would have thought they were giving Congress the right to prohibit firearms from individuals who had only been convicted of a misdemeanor crime.

(Def.'s Mot. at 3-4.)

The government disagrees. It argues that the Supreme Court identified "presumptively lawful regulatory measures only as examples" of reasonable restrictions to the right to bear arms, and that § 922(g)(9) is another such reasonable restriction.

> Logically, the firearm prohibition in Section 922(g)(9) should survive *Heller*. The Supreme Court's recent analysis makes clear that convicted felons do not have a Second Amendment right to keep and bear arms. 128 S.Ct. at 2817. In Section 922(g)(9), Congress addressed a particularly dangerous type of misdemeanor, concluding that persons convicted of such violent misdemeanors had often engaged in felonious conduct, and posed an unacceptable risk of future violence. *See* 142 Cong. Rec. at 5,840 (statement of Sen. Lautenberg)("Domestic violence, no matter how it is labeled, leads to more domestic violence. And guns in the hand[s] of convicted spouse abusers lead to death."); *id.* at 26,674 (same)(noting that "wife

3

beaters" frequently plead more serious charges "down to a misdemeanor and [get] away with a slap on the wrist."). Prohibiting the possession of firearms by such individuals readily falls within the ambit of presumptively lawful regulatory measures recognized in *Heller*. 128 S.Ct. at 2817 n. 26; *see also United States v. Emerson,* 270 F.3d 203, 226 n. 21 (5th Cir. 2001) (noting that Second Amendment provides no right to "violent criminals" to carry firearms (internal quotes omitted)). Indeed, at the time of the framing, the most ardent supporters of a specific amendment guaranteeing an individual right to keep and bear arms recognized that convicted felons and those who engaged in violent criminal activity would not enjoy the benefit of such a right. *See* Bernard Schwartz, THE BILL OF RIGHTS: A DOCUMENTARY HISTORY 665 (1971) (quoting proposal at the Pennsylvania Ratifying Convention stating that "no law shall be passed for disarming the people or any of them unless for crimes committed, *or real danger of public injury from individuals*" (emphasis added)); *id*. at 681 (quoting proposal by Samuel Adams at the Massachusetts Ratifying Convention to the effect that the proposed Constitution should "never [be] construed . . . to prevent the people of the United States, *who are peaceable citizens*, from keeping their own arms" (emphasis added)); Stephen P. Halbrook, "What the Framers Intended: A Linguistic Analysis of the Right to 'Bear Arms'", 49 Law & Contemp. Probs. 151 (1986) ("*violent criminals*, children, and those of unsound mind may be deprived of firearms . . . .") (emphasis added).

(Gov't's Mem. at 4-5.)

In my opinion, the defendant reads too much into the *Heller* decision. The core ruling by the Court is that any law which blanketly bans possession of a usable firearm, to wit, a handgun, in any and all individuals' homes strikes at the heart of the Second Amendment and is therefore unconstitutional. This is because the Second Amendment expressly grants an individual right to keep and bear arms. This is not to say, however, that all laws which place any sort of restrictions on possession of firearms are unconstitutional. To the contrary, as the Court in *Heller* stated:

> There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms. Of course the right was not unlimited, just as the First Amendment's right of free speech was not[.] Thus, we do not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for *any purpose*.

128 S.Ct. at 2799.

The defendant asserts that "[i]t is difficult to conceive that our Founding Fathers would have tolerated the notion that the Second Amendment gave Congress the right to restrict firearms to those

who had been convicted of mere misdemeanor conduct." (Def.'s Mot. at 4.) He then minimizes the particular nature of the misdemeanor of which he has been convicted by suggesting that there is a modern stigma attached to crimes of domestic violence which was not extant in the 18th century. More precisely, he asserts: "Viewed from the Eighteenth Century perspective, the crimes of domestic violence did not carry the same social opprobrium that they do today." (Def.'s Mot. at 5.) He then seems to conclude (although he does not explicitly say it) that the Founding Fathers would not have viewed domestic violence as seriously as we do today. That they would not have done so thereby renders section 922(g)(9) unconstitutional because the Founding Fathers would not have seen a misdemeanor conviction for domestic violence as a reason to deprive a citizen of his personal right to bear arms.

Aside from not offering any specific factual or historical support for such a rather eye-catching proposition, the defendant's argument fails to recognize the *Heller* Court's explicit recognition of the viability of laws that restrict certain categories of persons from possessing firearms, including (but not necessarily limited to) convicted felons and the mentally ill. Quite clearly, the Supreme Court was sending a message -- not that <u>only</u> those categories of persons can be prohibited from possessing firearms without running afoul of the Second Amendment -- but that other persons whose conduct had rendered them a danger to others could also be prohibited from possessing firearms without running afoul of the Second Amendment. And, simply stated, one who has been convicted of the crime of domestic violence, regardless of whether such conviction was for a misdemeanor or felony, has shown himself or herself to be a danger to others.

As the government notes in its brief, while the circuits that rejected pre-*Heller* Second Amendment challenges to section 922(g)(9) may have assumed the amendment did not confer an individual right to keep and bear arms, those courts did not imply that the existence of such a right would have led to a different result. *E.g., United States v. Pfeifer*, 371 F.3d 430, 438 (8th Cir. 2004);

5

*United States v. Hancock*, 231 F.3d 557, 565-66 (9th Cir. 2000); *United States v. Smith*, 171 F.3d 617, 625 (8th Cir. 1999) (Section 922(g)(9) "reflects Congress's concern that an individual in a domestic relationship who would attempt to use physical force or threaten use of a weapon was as dangerous as one who actually committed an act of physical force and similarly should not be allowed to possess a firearm.").

Even more to the point, in *United States v. Booker* --- F.Supp.2d ---, 2008 WL 3411793 (D. Me.), the very claim advanced here by Li was considered and rejected. In *Booker*, the defendant sought dismissal of the indictment, in which he was charged with a violation of 18 U.S.C. § 922(g)(9), claiming that the statute under which he was charged violated the Second Amendment. The court denied Booker's motion on June 6, 2008, on *stare decisis* grounds, noting that binding precedent in that circuit established that the Second Amendment conferred a collective, not an individual, right to bear arms. Following issuance of the *Heller* decision, the defendant filed a motion for reconsideration. Once again, the district court denied his motion. In a well reasoned opinion in which it discussed the *Heller* case, the *Booker* court concluded as follows:

> Based on the absence of a meaningful distinction between felons and persons convicted of crimes of domestic violence as predictors or firearm violence, the critical nature of the governmental interest, and the definitional tailoring of the statute, the Court concludes that persons who have been convicted of a misdemeanor crime of domestic violence must be added to the list of "felons and the mentally ill" against whom the "longstanding prohibitions on the possession of firearms" survive Second Amendment scrutiny.

2008 WL 3411793 at *3.

Finally, the defendant has laudably brought to the attention of this court a recent decision issued by the Honorable Barbara B. Crabb of the Western District of Wisconsin. In *United States v. Skoien*, Case No. 08-CR-12 (W.D. Wis. Aug. 27, 2008), Judge Crabb rejected a Second Amendment challenge to § 922(g)(9). In doing so, she stated, *inter alia*,

> Although the Supreme Court has now made it clear that [United States v.] Miller [307 U.S. 174 (1939),] [which stood for the proposition that the right to bear arms is

6

a collective right,] is no longer good law, the court of appeals' ultimate decision in Gillespie [v. City of Indianapolis, 185 F.3d 693 (7th Cir. 1999),] is still binding on the district courts in this circuit. I agree with the district court's prediction in the Gillespie case that § 922(g)(9)'s ban would survive in any event whether the right to bear arms is a collective or individual right. Gillespie, 185 F.3d at 699. As the court of appeals said, "[c]onstitutionally speaking, there is nothing remarkable about the extension of federal firearms disabilities to persons convicted of misdemeanors, as opposed to felonies." Gillespie, 185 F.3d at 706. This conclusion is bolstered by the decision in United States v. Price, 328 F.3d 958, 961 (7th Cir. 2003) (acknowledging decision by Court of Appeals for Fifth Circuit holding that right to bear arms is individual right but upholding constitutionality of 18 U.S.C. § 922(g)(8) (restricting firearms possessions by persons under court ordered restraint from harassing, stalking or threatening intimate partner) and concluding that § 922(g)(1) is constitutional).

*Skoein*, Case No. 08-CR-12, slip op. at 3-4.

I agree with the reasoning and conclusions reached by the courts in *Booker* and *Skoein*. Such being the case, and for all of the additional reasons set forth above, I am satisfied that the provisions of section 922(g)(9) pass constitutional muster, even in the wake of *Heller*. Li has not offered any persuasive reason to believe that post-*Heller* constitutional jurisprudence should render it otherwise. Thus, it will be recommended that Li's motion to dismiss counts 4 and 5 be denied.

**B. Motion for Severance**

Li's motion to sever is predicated on the proposition that Counts 4 and 5 have been misjoined with Counts 1 through 3 under Fed. R. Crim. P. 8(a) and that, therefore, the trial on Counts 4 and 5 should be separate from the trial on Counts 1 through 3. In the alternative, if there has been no misjoinder under Rule 8(a), Li asserts that he should be granted a severance under Fed. R. Crim. P. 14.

The first arrow in Li's quiver is that Counts 4 and 5 have been misjoined with Counts 1 through 3. As stated previously, Counts 1 through 3 charge Li with concealing, harboring, and shielding from detection certain aliens for the purpose of commercial advantage and private financial gain, all in violation of Title 8 U.S.C. §§ 1324(a)(1)(A)(iii), 1324(a)(1)(A)(v)(II), and 1324(a)(1)(B)(i). Count 4 charges Li with possession of a firearm on July 16, 2008, to wit, a Ruger

.22 caliber handgun, bearing serial number 15-22220, Li having been previously convicted of a misdemeanor crime of domestic violence, all in violation of Title 18 U.S.C. §§ 922(g)(9) and 924(a)(2). Count 5 charges Li with the same offense as charged in Count 4, but with respect to a different firearm, to wit, a Glock .40 caliber handgun, bearing serial number GSS234.

Li argues that the gun charges are not of the same or similar character as the harboring charges; that they are not based on the same act or transaction as the harboring charges; and, that they are not based on the same act or transaction as the harboring charges. Thus, they cannot be jointly charged and tried with the harboring charges without running afoul of Rule 8(a).

Rule 8(a), Fed. R. Crim. P., governs the joinder of offenses:

(a) Joinder of Offenses. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Under Fed. R. Crim. P. 8(a), offenses "of the same or similar character" or which "are based on the same act or transaction" or which "are connected with or constitute part of a common scheme or plan" may be charged in the same indictment. The court must look to the face of the indictment to determine whether the charged offenses (1) are of sufficiently similar character, (2) are sufficiently based on the same act or transaction, or (3) are sufficiently connected with or constitute part of a common scheme or plan, to be joined under Rule 8(a). *United States v. Alexander*, 135 F.3d 470, 475 (7th Cir. 1998). The Seventh Circuit has held that Rule 8(a) "is a rather clear directive to compare the offenses charged for categorical, not evidentiary, similarities." *Id.* at 476 (internal citations omitted). All that Rule 8(a) requires is that the offenses be similar. *United States v. Turner,* 93 F.3d 276, 283 (7th Cir. 1996).

That said, generally, "there is a strong policy preference in favor of the joinder of qualifying charges and the rule must be broadly construed toward that end." *Alexander,* 135 F.3d at 476; *see*

8

*also United States v. Archer,* 843 F.2d 1019, 1021 (7th Cir. 1988). In *United States v. Freland,* 141 F.3d 1223, 1226 (7th Cir. 1998), for example, the Seventh Circuit held that joinder was "clearly" proper where the defendant was charged with two armed bank robberies which occurred at different banks more than six months apart. And in *United States v. Coleman,* 22 F.3d 126, 133 (7th Cir. 1994), the Seventh Circuit explained the parameters of Rule 8(a) by providing this example: "Two armored car robberies committed months apart are offenses of same or similar character; possessing five kilograms of cocaine and defrauding a bank, even if they occur on the same day, are not."

In *United States v. Smith*, 795 F.2d 841 (9th Cir. 1986), the defendant had been charged in one indictment with both firearms and child pornography violations. The Court of Appeals for the Ninth Circuit upheld the defendant's conviction. In doing so, it held, *inter alia*, that the lower court had not erred in refusing to order severance of counts under Fed. R. Crim. P. 14. Moreover, because the defendant had not sought severance under Rule 8(a), he could not thereafter challenge on appeal any misjoinder of the offenses. Notably, however, in reaching its conclusion the court observed the following:

> The firearms charge and the child pornography charges are clearly misjoined in the present case. Two offenses may be joined only "if the offenses charged . . . are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed. R. Crim. P. 8(a). The firearms and child pornography counts are clearly dissimilar in kind, and as the government discussed at length in its closing argument, the presence of the gun was in no way related to or part of a common plan involving the photographs of the girls.

*Smith*, 795 F.2d at 850.

The court's last statement in *Smith* (albeit not dealing with exactly the same crimes as charged in the instant indictment) is precisely the premise of the defendant's motion to sever in this case. And apparently, the government agrees with the defendant because on September 17, 2008, the government filed a letter with the court stating that it does not oppose Li's motion to sever Counts 4 and 5 of the indictment for trial. Such being the case, it will be ordered that the trial of

9

Counts 4 and 5 of the indictment be severed from the trial of Counts 1 through 3. I defer entirely to Judge Griesbach with respect to the order in which the two trials should be conducted. That matter can be discussed with Judge Griesbach at the final pretrial conference.

**NOW THEREFORE IT IS RECOMMENDED** that defendant Li's Motion to Dismiss Counts 4 and 5 of the Indictment be **DENIED**;

**NOW THEREFORE IT IS ORDERED** that defendant Li's Motion to Sever the trial of Counts 4 and 5 from the trial of Counts 1 through 3 be and hereby is **GRANTED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) - (C), Federal Rule of Criminal Procedure 59(a) - (b), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any order or recommendation herein or part thereof may be filed within ten days of the date of service of this recommendation and order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

**SO ORDERED** this 22nd day of September, 2008, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge